UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO. 8:19-cr-544-TPB-TGW |
| ) | |
| MIGUEL GUERRA ) | |
| ) | |
| Defendant ) | |
| _____/ | |

## **DEFENDANT MIGUEL GUERRA'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE AND DEPARTURE FROM SENTENCING GUIDELINES**

Defendant Miguel Guerra stands before this Honorable Court for sentencing after pleading guilty to one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel operating within the jurisdiction of the United States in violation of 46 U.S.C §§ 70503(a), 70506(a) and (b) and 21 U.S.C 960(b)(1)(b)(ii). As the Courts have gradually shifted away from the mandatory nature of Federal Sentencing Guidelines, district courts are now empowered consider all aspects of a crime, all qualities of the defendant, and all possible punishments when fashioning a sentence.  For the reasons argued herein, Mr. Guerra and counsel submit that a departure and variance from the proposed guidelines is warranted and that a sentence below the advisory guideline range would be sufficient, but not greater than necessary to achieve the sentencing objectives enumerated in 18 U.S.C § 3553(a).

##    I.    INTRODUCTION

Apart from his conduct in this case, Miguel Guerra has spent the past 31 years of his life as a hardworking, law-abiding, fisherman from the city of Caracas, Venezuela. (*See* Presentence Investigation Report Page 10, ¶¶ 45, 47 [hereinafter PSR]). He has worked on the ocean since the age of nine and regularly risked his life at sea to provide for his children and care for his mother. (PSR ¶¶ 48-50).

Mr. Guerra understands the seriousness of his offense and respects that he must be punished for his actions. However, given his cooperation with the government and the minimal role he played in the smuggling operation, he respectfully requests that this court consider the following relevant 18 U.S.C § 3553(a) factors and impose a sentence below the advisory guideline range. Further, as the PSR does not consider Mr. Guerra's minimal role when it recommends 108 to 135 months in prison, he respectfully asks this court to consider a minimal role reduction.

Finally, as the court will learn from Mr. Guerra's story, he is a loving and caring man who worked hard every day of his life to ensure that his family had food on the table. He is a man who will do anything to support his family. Having not had a formal education for most of his life, Mr. Guerra is limited in his ability to read and write in his native language and speaks no English at all. (PSR ¶ 57). Mr. Guerra is interested in returning to Venezuela to spend the remaining years of his life raising his sons and caring for his sick mother. (PSR ¶ 51). A sentence that allows him to do so is both warranted and justified. Thus, Mr. Guerra asks this Court to sentence him to the lowest permissible term of incarceration with the ability to participate in UNICOR to learn auto mechanics or any other vocational training provided. (PSR ¶ 59).

## II. HISTORY AND CHARACTERISTICS OF MR. GUERRA

Mr. Guerra is a 40-year-old Venezuelan National. Despite enduring unstable circumstances growing up, he has strived live a positive and productive life in support of his family prior to this incident.

*A. Childhood and Young Adult Life*

Mr. Guerra was born August 17, 1980, in Caracas, Venezuela. His father, Carlos Alberto Guerra, suffered from alcoholism and his mother, Levia Margarita Guerra, dealt with a severe mental disability that prevented her from being able to care for him and his siblings. (PSR ¶ 45). Raised by his grandparents in extreme poverty, Mr. Guerra experienced severe emotional, psychological, and physical hardships from an early age. (PSR ¶ 46). He was forced to grow up fast, having to fend for himself to supplement the minimal support his loving grandparents could provide. (PSR ¶ 47). Mr. Guerra undoubtedly had a troubled childhood, which is another factor district courts have taken into consideration for sentencing purposes and the basis on which they have granted downward departures from sentencing guidelines. United States v. Ruiz, No. 06CR543(PKC), 2009 WL 636543 (S.D.N.Y. Mar. 11, 2009 at 1 (noting that the defendant's "difficult childhood" was a factor that the courts considered in granted a sentence below the sentencing guidelines).

*B. Family*

Mr. Guerra is fortunate to still have the love and support of his girlfriend Estefania Sosa back home. Ms. Sosa has been with him since 2015 and was a homemaker prior to Mr. Guerra's incarceration, as he provided financial support for her and their 3-year-old son, Elias Alberto Guerra. As of now, Ms. Sosa is the only one capable of providing support for Elias but she has

3

dealt with significant health problems related to a kidney illness that she suffers from. (PSR ¶ 49) Mr. Guerra has one other son, Jose Miguel Guerra, from a prior relationship. Jose is 13 years old, and Mr. Guerra has tried to remain a consistent presence within his life. (PSR ¶ 50).

Mr. Guerra has two siblings, Carlos and Adreina Guerra, whom he maintains a good relationship with. Prior to his arrest, he worked with Adreina to provide continuous care for his mother. While Adriena was their mother's daily caregiver, Mr. Guerra paid for medication to treat her mental illness. (PSR ¶ 48). Mr. Guerra plans to return to Venezuela to continue supporting his family and providing for his mother. (PSR ¶ 51).

*C. Employment and Health*

Mr. Guerra has spent 31 of his 40 years employed as a fisherman. With an income that varied month to month, his financial situation was often untsable. (PSR ¶ 59). In addition to an unstable financial situation, Mr. Guerra suffers from severe back pain related to a prior work-related injury that occurred when he fell of a boat as a child. He has also had an untreated hernia for years, putting off surgery under the advice of a medical opinion that corrective surgery could affect his mobility and ability to work. Finally, Mr. Guerra has gastritis and thyroid issues which require medication. As Mr. Guerra has no ability to pay for said medication, these ailments have gone untreated during his time in the Hernando County Detention Center. (PSR¶ 53).

### III. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT VARIANCE

A sentencing court must "impose a sentence sufficient, but not greater than necessary,' 18 U.S.C § 3553(a), to achieve the overarching sentencing purposes of 'retribution, deterrence, incapacitation, and rehabilitation.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018) (quoting *Tapia v. United States*, 564 U.S. 319 325 (2011); *accord* 18 U.S.C § 3553(a)(2)).

4

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment . . ." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81. 113(1996)).

Mr. Guerra's poor financial situation, the need to provide food for his children, and his responsibility to purchase medication for his mother led to a lapse in judgment and participation in this offense. (PSR ¶ 27). Although he wanted to help his mother and contribute financially to his household, Mr. Guerra is devastated by the thought that his offense has put his family in a worse position. He does not dispute his guilt or the seriousness of his offense, but the factors contained in 18 U.S.C § 3553(a)(2) do not warrant a substantial period of imprisonment in this case.

Mr. Guerra has demonstrated respect for our legal system throughout this process despite his lack of familiarity with our processes or any allegiance to this country. He entered a timely guilty plea (PSR ¶ 26), has clearly demonstrated acceptance of responsibility for the offense (PSR ¶ 36), assisted authorities in the prosecution of his own misconduct (PSR. ¶37), and was cooperative during his interview by the United States Probation Officer (PSR. ¶ 27). See 18 U.S.C § 3553(a)(2)(A).

A just punishment should also consider less traditional elements of his punishment such as: he will be incarcerated in a foreign country where he does not know anyone, he does not speak a word of English, and his family will be unable to visit him. Given the psychological and emotional challenges he will have to overcome in such a short period of time, any period of incarceration will adequately deter him from any criminal conduct in the future. Mr. Guerra has

already felt the consequences of his actions as he has been unable to be the provider his family has always depended on. *See* 18 U.S.C 3553(a)(2)(B).

Mr. Guerra's responsibility to his family back home, coupled with poor health conditions at his age, distinguish him from others convicted of the same offenses for sentencing purposes because they reduce his likelihood of reoffending and shorten his life expectancy. Thus, the need to protect the public from further crimes committed by Mr. Guerra is low. *See* 18 U.S.C. § 3553(a)(2)(C).

Mr. Guerra would benefit from educational or vocational training, medical care, or other correctional treatment in prison. However, his status as an undocumented immigrant will likely prevent him from participating. Mr. Guerra would like to receive vocational training and learn about auto mechanical engineering while incarcerated. (PSR ¶ 59).

This Court should exercise its broad discretion and impose a less stringent sentence than the one suggested by the Guidelines in this case, especially since Mr. Guerra timely pled guilty, accepted responsibility for his actions, and will likely be deported upon completion of his sentence and prohibited from re-entering the United States. Incarceration, in accordance with the advisory sentence under the sentencing guidelines, would consume most, if not all, of Mr. Guerra's productive years as a source of financial support for his family.

### IV.     MR. GUERRA'S ROLE WARRANTS A DOWNWARD DEPARTURE

Section 3B1.2 of the Guidelines provides an adjustment of two, three, or four levels for a defendant who plays a role "substantially less culpable than the average participant in the criminal activity." United States Sentencing Commission, *Guidelines Manual*, § 3B1.2, comment. (n.3(A)) (Nov. 2018). This Section was amended in 2015 after the Commission conducted a study, which

"found that mitigating role is applied inconsistently and more sparingly than the Commission intended." USSG App. C, amendment 794. Specifically, the Commission "revise[d] the commentary to emphasize that 'the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative' and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible." USSG App. C, amendment 794 (quoting USSG § 3B1.2, comment (n.3(C)).

According to this section, a sentencing court must "consider the totality of the circumstances, USSG § 3B1.2, comment (n.3(C)). assessing 'first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and second, [his] role as compared to that of other participants in [his] relevant conduct. '" *United States v. Colorado*, 716 Fed. Appx. 922, 924 (11th Cr. 2017) (per curiam) (quoting *United States v. Rodriguez De Varon*, 175 F.3d 930,939 (11th Cir. 1999) (en banc)). The Commentary to USSG § 3B1.2 provides a non-exhaustive list of factors to consider in this fact-intensive inquiry, which includes:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

USSG § 3B1.2 comment. (n.3(C)).

Mr. Guerra's participation in the offense should be characterized as minimal given his limited knowledge and control over the offense. *Contra United States v. Moreno*, 199 Fed. Appx. 839, 842 (11th CIR. 2006) (describing the defendant as "a knowing and willing participant in a drug smuggling venture"). The probation office came to the conclusion that Mr. Guerra's limited education and resources made him susceptible to recruitment into this operation. (PSR ¶ 77).

Mr. Guerra was forthright and admitted that he knew about the smuggling operation, but **he never actually handled the cocaine**. (PSR¶ 27). Additionally, Mr. Guerra explained that he only joined the operation because he was not making enough money as a fisherman to pay for his mother's psychiatric medication. (PSR¶ 27).

There is no evidence that Mr. Guerra had any ownership interest in the drugs, any decision-making authority, or played any role beyond portraying his normal role as a fisherman. (*See* R & R.2, ECF No. 180.): *see also* USSG § 3B1.2 comment. (n.3(C)) ("[A] defendant who does not have a proprietary interest in the criminal activity should be considered for an adjustment under this guideline."). As an experienced lifelong fisherman, it likely that Mr. Guerra was recruited in the operation to pose as a fisherman, and his only responsibility was to diminish the suspicion of authorities.

Even if his role cannot be described as minimal, Mr. Guerra's role should at least qualify as minor or somewhere in between. *See* USSG § 3B1.2 ("In cases falling between (a) and (b), decrease by 3 levels."). A minor participant is someone "who is less culpable than most other participants in the criminal activity." USSG § 3B1.2 comment. (n.5) Having determined that Mr. Guerra's limited education and resources made him more susceptible to recruitment into this operation, the probation office agrees that he was less culpable than the mariner's that handled and

8

jettisoned the stash, as well as those who had a proprietary interest in the distribution of the illicit substance.

Had the Presentence Investigation Report properly incorporated a mitigating role adjustment, Mr. Guerra's Base Offense Level would be reduced significantly pursuant to USSG § 2D1.1(a)(5). Essentially, since his base level offense is 36, an additional 3 levels.

### V. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Mr. Guerra should not receive a sentence that is unjustifiably disparate from sentences imposed in other Maritime Drug Law Enforcement cases. In determining a sentence, 18 U.S.C. § 3553(a)(6) instructs that the sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

### VII. CONCLUSION

For the reasons stated above, Mr. Guerra respectfully requests that the Court grant Mr. Guerra a downward departure for his role in the offense. He respectfully suggests that a departure and variance below the guideline range would be sufficient but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Frank W. McDermott
Frank W. McDermott, Esquire
10010 Seminole Blvd.
Seminole, FL 33772
(727) 367-1080, Fax (727) 367-9940
FL BAR No:0163120
frank@injuryarrest.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERIFY** that on July 19, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

AUSA JOSEPH RUDDY

/S/ Frank W. McDermott

Frank W. McDermott, Esquire